IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| LEONARD RACKLEY, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) | Case No. CIV-14-145-HE |
| JOHNNY BLEVINS, DOC Internal Affairs, JUSTIN JONES, DOC Director, TIM WILKINSON, Warden (DCF), MARK KNUTSON, Director's Designee, | ) ) ) ) ) ) |  |
| Defendants. | ) |  |

## REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis* brings this action pursuant to 42 U.S.C. § 1983, alleging a violation of his constitutional rights. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) (1) (B)-(C). An initial review of the Complaint, ECF No. 1, has been conducted pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915 (pertaining to *in forma pauperis* proceedings). It is recommended that the Complaint be **DISMISSED** *sua sponte* for failure to state a claim upon which relief may be granted. It is further recommended that this dismissal count as a "prior occasion" or strike pursuant to 28 U.S.C. § 1915(g).

## PROCEDURAL HISTORY

Plaintiff brings this action against Johnny Blevins, "acting in his official capacity as Chief of Internal Affairs;" Justin Jones, "acting in his official capacity as Director of

the Department" with "direct supervisory powers over Defendant Blevins;" Tim Wilkinson, identified as the Warden at the Davis Correctional Facility; and Mark Knutson, identified as the Director's Designee for the Oklahoma Department of Corrections (DOC); (Complaint, ECF at 1-2).

This case arises from the "indefinite termination" of Chasity Rackley's privilege to visit her husband, Leonard Rackley, the Plaintiff in this action. On February 23, 2008, Ms. Rackley was visiting her husband who was then incarcerated in the Oklahoma State Reformatory (OSR). A male officer and a female officer interrupted the visit, separated the two, and searched each for contraband. No contraband was found on either, but a prison official did find a cell phone in the area where the couple had been sitting in the visitation room (Complaint at 2). Plaintiff was accused of possession of a cell phone, and at his disciplinary hearing, he pled guilty to the offense. His punishment included thirty days in disciplinary segregation, loss of 365 earned credits and assignment to Level 1 for ninety days (Exhibits to Complaint, ECF 1-2 at 1). The report of Disciplinary Hearing Actions did not include loss of visiting privileges as a sanction for the possession of a cell phone.

On February 26, 2008, however, Rick Whitten, then the Acting Warden of OSR, wrote an interoffice memorandum stating that Plaintiff's visiting privileges with Chasity Danyel Rackley were indefinitely terminated, that Ms. Rackley would be removed from Plaintiff's approved list of visitors immediately, and that visits from Ms. Rackley would be denied at all DOC facilities. In addition to the cell phone recovered from the visiting

area, the indefinite termination of visiting privileges was imposed because correctional officers had allegedly overheard the couple planning to have Ms. Rackley bring drugs into the facility during a future visit (ECF 1-2 at 3). Mr. Whitten also sent a letter to Ms. Rackley informing her of the indefinite termination of visiting privileges. (ECF 1-2 at 4).

Shortly after the disciplinary proceedings at OSR, Plaintiff was transferred to the Oklahoma State Penitentiary (OSP), and approximately one year after that, he was transferred to the Davis Correctional Facility (DCF). According to Plaintiff, he was allowed to visit with his wife at OSP and, initially, at DCF (Complaint at 4). But on July 28, 2010, while Plaintiff was incarcerated at DCF, Plaintiff asked that his wife be removed from his list of visitors after the two had argued. Apparently, Plaintiff regretted his decision almost immediately, because in August 2010, he asked DCF officials to put his wife back on his list of approved visitors (Complaint at 4). The request was denied, however, because DOC regulations require a prisoner to wait 120 days, in this case until November 28, 2010, before a person who had been removed from his list of visitors could be added back to the list (Complaint at 4; Exhibits, ECF 1-2 at 2). After 120 days, when Plaintiff tried again to have his wife's visitation privileges restored, he was informed of the 2008 indefinite termination of visitation imposed by Acting Warden Whitten of OSR. Defendant Tim Wilkinson, the Warden of DCF, informed Plaintiff that the Warden of the OSR was the only person who could restore Ms. Rackley's visiting privileges (ECF 1-2 at 6). In a letter dated October 19, 2011, however, the new Warden of OSR, James Rudek, declined to act on Plaintiff's request because Plaintiff was no

3

longer incarcerated at OSR. Rudek claimed that he lacked jurisdiction to reinstate Ms. Rackley's visiting privileges (ECF 1-2 at 7).

Plaintiff next presented his case to Defendant Johnny Blevins, Administrator of the DOC's Office of Internal Affairs. In a letter dated April 2, 2012, Defendant Blevins stated that he could not "re-instate visitation at this time[]" because "[a]ccording to your correspondence you are still denying your actions." (ECF 1-2 at 8).

Defendant Wilkinson again denied Plaintiff's request to staff on January 29, 2013, based on Mr. Blevins' decision ECF 1-2 at 9.

On March 27, 2013, William Rankin, Plaintiff's Unit Manager at DCF, and Lesa Grizzle, Plaintiff's case manager, sent a request to Greg Williams, Administrator of Private Prisons and Jails, requesting that Chasity Rackley's visitation privileges be restored based on Plaintiff's improved conduct and the fact that visitation at DCF is by video, so there would be no opportunity for Ms. Rackley to deliver contraband to her husband (ECF 1-2 at 31-32). Mr. Williams denied the request based on the previous denial by Defendant Johnny Blevins (ECF 1-2 at 15).

After resubmitting his grievance at DCF, Plaintiff received an amended response from the reviewing authority on May 24, 2013, stating that based on the denial of relief by Greg Williams, Administrator of Private Prisons, Plaintiff's request to have his wife's name taken off the DOC visitation suspension list was denied (ECF 1-2 at 20).

Plaintiff appealed to Defendant Mark Knutson, the Director's Designee for handling inmate appeals. Defendant Knutson affirmed the denial of relief based on his

4

finding that Plaintiff had not substantiated his appeal with any authority supporting his claim of error. Defendant Knutson then added that, although Plaintiff had exhausted his administrative remedies, "the grievance procedure does not satisfy the additional requirements for exhaustion of administrative remedies required by the Governmental Tort Claims Act, 51 O.S. § 151 et seq." (ECF 1-2 at 24).

Based on Defendant Knutson's misdirection, Plaintiff filed a claim under the Oklahoma Governmental Tort Claims Act, only to have his claim denied by the Oklahoma Risk Management Department based on the Act's exclusions of claims premised on omissions by independent contractors for the State and claims stemming from the operation or maintenance of any prison, jail or correctional facility (ECF 1-2 at 26). The Oklahoma Risk Management Department added that Plaintiff's claim was also denied for "failure to exhaust administrative remedies" (ECF 1-2 at 26-27).

Plaintiff then filed this civil rights action.

## GROUNDS FOR DISMISSAL

Pursuant to 28 U.S.C. § 1915A, this Court must review complaints filed in civil actions by prisoners seeking redress from a governmental entity or officer or employee of a governmental entity. After conducting the initial review, this Court must dismiss the complaint, or any portion of the complaint, which is frivolous, malicious or fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2). *See also* § 1915(e)(2)(B)(ii) (dismissal of a complaint filed *in forma pauperis* is proper for failure to

state a claim upon which relief may be granted); *Young v. Davis*, 554 F.3d 1254, 1256 (10th Cir. 2009). As with a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept Plaintiff's allegations as true and construe them, and any reasonable inferences to be drawn from them, in the light most favorable to Plaintiff. *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007).

**ANALYSIS**

Plaintiff contends that DOC officials have failed to adhere to their own operations policy in violation of his due process and equal protection rights. He further complains that DOC officials have given him conflicting instructions about how individuals may be reinstated to an inmate's visitation list. Finally, Plaintiff contends that his fifth and fourteenth amendment rights have been violated because there is "no legal justification for continued suspension of visiting privileges."

"To make a claim of denial of due process in violation of the Fourteenth Amendment, a plaintiff must show the deprivation of a protected liberty or property interest." *Schmitt v. Rice*, 421 Fed. Appx. 858, 861(10th Cir. 2011)(*citing Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972)). Prison operating procedures and regulations can, in limited situations, create liberty interests subject to due process protections. In *Sandin v. Conner*, 515 U.S. 472 (1995), however, the Supreme Court narrowed the scope of liberty interests created by prison regulations and procedures, limiting them to those creating conditions imposing "atypical and significant hardship on the inmates in relation to the ordinary incidents of prison life."

6

*Id.* at 484. After *Sandin*, the Tenth Circuit Court of Appeals has repeatedly and consistently disavowed a liberty interest in prison visitation. *See Marshall v. Morton*, 421 Fed. Appx. 832, 838 (10th Cir. 2011)(stating that restrictions on a prisoner's visitation "are not different in such degree and duration as compared with the ordinary incidents of prisoner life to constitute protected liberty interests under the Due Process Clause"); *see also Jenner v. McDaniel*, 123 Fed. Appx. 900, 905 (10th Cir. 2005) (holding that no protected liberty interest existed in visitation privileges); *Marsh v. Newton*, No. 97–2157, 1998 WL 39235, * 1 (10th Cir 1998) (rejecting a prisoner's due process claim because her alleged restriction on visitation did not involve an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" (citation omitted)); *Abad v. Furlong*, No. 96–1095, 1996 WL 693057, at * 1 (10th Cir. 1996) ("Plaintiff's loss of ... visitation rights, sanctions imposed apart from the disciplinary proceedings, fail[s] to provide a basis for a federal constitutional claim." (citations omitted)); *see also Douglas v. Hilligoss*, 2010 WL 1329075 (W.D. Okla. Feb. 26, 2010) (unpublished report and recommendation by magistrate judge) (recommending dismissal of inmate's action with prejudice on grounds that an inmate had no protected liberty interest in a prison job, visitation privileges, telephone use, or recreation), adopted, 2010 WL 1328701 (W.D. Okla. Mar. 29, 2010) (unpublished order by district judge); *cf. Kentucky Department of Corrections v. Thompson*, 490 U.S. 454 (1989) (pre-*Sandin* case holding that two prisoners lacked a protected liberty interest in visitation with particular individuals).

Thus, because Plaintiff cannot show a constitutionally protected liberty interest in his visitation privileges, his claim that Defendants deprived him of the opportunity to visit his wife fails to state a viable claim for relief. Because Plaintiff's allegations against Defendants fail to state a claim upon which relief can be granted, it is recommended that his Complaint be dismissed with prejudice.

Plaintiff's suit against the named Defendants is also subject to dismissal on other grounds. First, Plaintiff has sued Defendant Blevins "in his official capacity as Internal Affaris [sic] Chief when he erroneously denied visitation privileges to claimant" (Complaint at 1). Plaintiff is seeking monetary damages from Defendant Blevins. Claims for damages against a state employee in his official capacity are construed as claims against the State. Such claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 165–68 (1985) (stating that the court should treat a suit against an individual acting in an official capacity as a suit against the state itself, which the Eleventh Amendment bars); *White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996) (Eleventh Amendment sovereign immunity barred § 1983 claims against prison officials in their official capacities). While a State may waive the defense of sovereign immunity, the State of Oklahoma has not waived its immunity defense against § 1983 claims brought in federal district court cases. *See Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 589 (10th Cir. 1994). The Eleventh Amendment forecloses any claim for monetary damages against Defendant Blevins in his official capacity, and the undersigned recommends dismissal with prejudice.

Plaintiff has also sued Defendant Jones in his "official capacity as Director, Oklahoma Department of Corrections" (Complaint, ECF 1 at 1). As discussed above, Defendant Jones is entitled to Eleventh Amendment immunity for § 1983 claims brought against him in his official capacity.

Additionally, Plaintiff's only allegation against Defendant Jones is that he "had direct supervisory powers over Defendant Blevins." But Defendant Jones can be held liable for claims brought against him in his individual capacity pursuant to § 1983 only if he personally participated in a constitutional violation. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). Furthermore, [g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). In *Iqbal*, the Court further declared that "[b]ecause vicarious liability is inapplicable to . . .§ 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Thus, a government official "is only liable for his or her own misconduct." *Id.* at 677. A defendant-supervisor may be held liable under § 1983 if the defendant-supervisor "creates, promulgates, implements, or in some way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which subjects, or causes to be subjected' th[e] plaintiff 'to the deprivation of any rights . . . secured by the Constitution.'" *Dodds v. Richardson*, 614 F.3d 1185, 1199 (quoting 42 U.S.C. §

1983) (2011). "A plaintiff may therefore succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* at 1200. Plaintiff has failed to allege any facts to demonstrate that Defendant Jones personally participated in any of the events leading to the filing of this civil rights case. Moreover, Plaintiff has not alleged sufficient facts to support a claim against Defendant Jones based on his supervision of Defendant Blevins. Accordingly, it is recommended that the claims against Defendant Jones be dismissed with prejudice.

As for Defendants Wilkinson and Knutson, Plaintiff's claims against these defendants is that Defendant Wilkinson denied his grievance and that Defendant Knutson, as the Director's Designee, denied his grievance appeal. The Tenth Circuit Court of Appeals has previously held that the mere denial of a grievance is inadequate to establish personal participation for claims brought pursuant to Section 1983. *See Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012). Therefore, the claims against Defendants Wilkinson and Knutson should also be dismissed with prejudice.

## **RECOMMENDATION**

In light of the foregoing, it is recommended that this action be **DISMISSED** on filing for failure to state a claim upon which relief may be granted. It is further recommended that the dismissal count as a "prior occasion" or strike pursuant to 28

U.S .C. § 1915(g). Plaintiff is advised of his right to file an objection to this Report and Recommendation with the Clerk of Court by **May 30, 2014**, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Plaintiff is further advised that any failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

This report and recommendation **disposes of all issues** referred to the undersigned Magistrate Judge in this matter.

**ENTERED** on May 13, 2014.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE